IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE TENET HEALTHCARE CORPORATION SECURITIES LITIGATION | ) | Civil Action No. 3:16-CV-2848-C (Consolidated with Civil Action No. 3:16-CV-3260-C) |

**ORDER**

On this day the Court considered:

(1) Defendants' Motion to Dismiss and Supporting Brief, filed June 12, 2017;

(2) Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, filed August 17, 2017;

(3) Lead Plaintiffs' Request for Judicial Notice, filed August 17, 2017; and

(4) Defendants' Reply in Support of Their Motion to Dismiss and Supporting Brief, filed September 18, 2017.

Having considered the foregoing, the Court is of the opinion that Lead Plaintiffs' Request for Judicial Notice should be **GRANTED** but that Defendants' Motion to Dismiss should also be **GRANTED**.

## I. BACKGROUND

This is a federal securities class action brought pursuant to the Securities Exchange Act of 1934. Defendant Tenet Healthcare Corporation (Tenet) is a publicly-traded corporation based in Dallas, Texas, that operates hundreds of hospitals, short-stay surgical hospitals, and outpatient centers across the United States. For some period of time prior to 2016, four of Tenet's hospitals located in Georgia and South Carolina entered into referral contracts with a clinic for low-income patients (Clinica) that violated federal anti-kickback laws. In 2016, following a four-year

government investigation of the kickback scheme, Tenet announced in a quarterly report that it had reached a settlement agreement with the United States Department of Justice and state agencies to pay almost $514 million to resolve its civil and criminal liability arising from the illegal kickbacks. Tenet further reported that two of its hospitals had agreed to plead guilty to conspiracy to defraud the United States by paying and receiving illegal kickbacks. In 2017, John Holland, a senior executive of Tenet HealthSystem (a separate legal entity from Tenet Healthcare Corporation) was indicted in federal court for, among other things, healthcare fraud.

Lead Plaintiffs David Burns, Steven Krems, Allan Ramirez, and Sameh Yamany filed multiple lawsuits in this Court in October of 2016, which the Court consolidated into this securities class action. Lead Plaintiffs, on behalf of all Tenet shareholders, have brought claims under the Securities Exchange Act against Defendant Tenet and Defendants Trevor Fetter, Daniel J. Cancelmi, and Biggs C. Porter (individual corporate officers of Tenet), alleging that these Defendants made materially false or misleading representations concerning the kickback scheme and government investigations that deceived investors and negatively impacted Tenet's stock price. Defendants now move to dismiss the Consolidated Amended Class Action Complaint.

## II. STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court must accept all factual allegations in a complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). In reviewing a motion to dismiss under Rule 12(b)(6), a district court must generally examine only the complaint and any attachments to the complaint. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). But a

court may consider extrinsic documentary evidence if (1) the document is attached to a defendant's motion to dismiss, (2) the document is referred to in the plaintiff's complaint, and (3) the document is "central" to the plaintiff's claim. *Id.* at 498–99. To survive a 12(b)(6) motion to dismiss, a complaint must contain enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it asserts facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This determination is context-specific and requires the court to draw upon its own experience and common sense. *Id.*

A heightened pleading standard is imposed for claims of fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[The Fifth Circuit] interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)). Conditions of the mind (malice, intent, knowledge, etc.) may be averred generally; but simple allegations that defendants possess a fraudulent intent will not satisfy. *Dorsey*, 540 F.3d at 339; Fed. R. Civ. P. 9(b). The Private Securities Litigation Reform Act of 1995 (PSLRA) raises the minimum pleading standard even higher for securities fraud actions, enhancing Rule 9(b)'s particularity requirement in two ways. *Neiman v. Bulmahn*, 854 F.3d 741, 746 (5th Cir. 2017). "First the plaintiff must specify each statement alleged to have been misleading, and the reason or reasons why the statement is misleading. Second, for each act or omission alleged to be false or

misleading, plaintiffs must state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." *Id.* (internal quotations and citations omitted).

## III. DISCUSSION

### A. Supplemental Materials Submitted by Plaintiffs

As a preliminary matter, the Court first addresses two requests by Plaintiffs to consider supplemental materials in support of their response to the motion to dismiss.

#### 1. Lead Plaintiffs' Request for Judicial Notice

First, Plaintiffs request that the Court take judicial notice of (1) the indictment of John Holland, entered on January 25, 2017, in the United States District Court for the Southern District of Florida; and (2) excerpts of Tenet Healthcare Corporation's annual reports to the Securities and Exchange Commission filed in 2011, 2012, and 2013. Defendants filed no response and the Court presumes that the request is unopposed. Further, it appears that both of these exhibits are matters of public record. Plaintiffs' Request for Judicial Notice is therefore **GRANTED** and the Court considers the attached exhibits in evaluating the motion to dismiss.

#### 2. Lead Plaintiffs' Notice of Supplemental Authority

Second, on October 3, 2017, Plaintiffs submitted a "Notice of Supplemental Authority," informing the Court that a recent opinion from the United States District Court for the Southern District of New York "may assist this Court in resolving the pending motion to dismiss . . . especially with respect to the scienter element of Plaintiffs' claims." This prompted both parties to engage in additional briefing that was not requested by the Court or authorized by any rule of this Court. The parties have had ample opportunity to fully brief the issues before the Court in a motion, response, and reply that were all permitted to exceed the Court's normal page

limitations. Additionally, the Court notes that the supplemental authority submitted by Plaintiffs is an unpublished district court opinion from outside the Fifth Circuit that would have no precedential value when considering the law applicable to this case. The Court therefore declines to consider any arguments or authorities contained in (1) Lead Plaintiffs' Notice of Supplemental Authority, filed October 3, 2017; (2) Defendants' Response to Plaintiffs' Notice of Supplemental Authority, filed October 12, 2017; or (3) Lead Plaintiffs' Reply to Defendants' Response, filed October 23, 2017.

**B. Defendants' Motion to Dismiss**

Plaintiffs' Consolidated Amended Class Action Complaint asserts two claims arising under the Securities Exchange Act of 1934—one for violation of § 10(b) of the Act (and Rule 10b–5 promulgated thereunder by the SEC) by all Defendants, and one for violation of § 20(a) of the Act by Defendants Fetter, Cancelmi, and Porter. "To state a claim under Rule 10b–5 a plaintiff must allege, in connection with the purchase or sale of securities, (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which the plaintiff relied (5) that proximately caused the plaintiff's injury." *Neiman*, 854 F.3d at 746 (internal quotations omitted). Section 20(a) provides for joint and several liability with the primary actor of a securities law violation for "a person who exerts control over a person who violates any provision of the Securities Exchange Act[.]" *Id.* (internal quotation omitted). "Nonetheless, control person liability is secondary only and cannot exist in the absence of a primary violation." *Id.* (internal quotation omitted).

Defendants move to dismiss the Consolidated Amended Class Action Complaint on the following grounds: (1) the complaint fails to meet the heightened pleadings standards of the

PSLRA and Rule 9(b) because it does not adequately allege that Defendants made any statements that were false or misleading at the time they were made; (2) the complaint fails to provide specific facts that create a strong inference of scienter; and (3) the complaint's allegations of loss causation are not plausible. The Court addresses each attack in turn.

**1. False or Misleading Statements**

Defendants first contend that the Plaintiffs have failed to identify any misstatements or omissions by any of the Defendants that were false or misleading at the time they were made. Plaintiffs' allegations of false or misleading statements throughout the Complaint are often repeated and interwoven with each other. After carefully examining the Complaint, however, the Court can generally group these allegations into three categories: (a) Defendants made materially false and misleading statements regarding the state of Tenet's compliance with federal and state laws and internal controls designed to identify illegal activity; (b) Defendants failed to immediately disclose the existence of ongoing investigations into Tenet's business practices and the receipt of subpoenas from government agencies; and © Defendants made materially false and misleading financial statements and public disclosures that failed to disclose Tenet was receiving revenue from illegal activities and failed to disclose a reasonably possible range of $72 million to $438 million in liabilities and penalties to which Tenet may have been subjected.

**a. Statements About Compliance and Internal Controls**

As to the first group of allegations, Plaintiffs have identified compliance language from a number of annual and quarterly reports during the Class Period (February 28, 2012 to August 1, 2016) that they complain was materially false and misleading. An example of this language reads as follows:

> In accordance with our ethics and compliance program, which is described in detail under "Compliance and Ethics" below, we have policies and procedures in place concerning compliance with the Anti-kickback Statute and the Stark law, among others. In addition, our ethics and compliance, law and audit services departments systematically review a substantial number of our arrangements with referral sources to determine the extent to which they comply with our policies and procedures and with the Anti-kickback Statute, the Stark law and similar state statutes.
>
> . . . Our ethics and compliance department maintains our multi-faceted, values-based ethics and compliance program, which is designed to (1) help staff in our corporate and Conifer offices, hospitals, outpatient centers and physician practices meet or exceed applicable standards established by federal and state laws and regulations, as well as industry practice, and (2) monitor and raise awareness of ethical issues among employees and others, and stress the importance of understanding and complying with our Standards of Conduct.
>
> . . . Pursuant to the terms of the charter, our ethics and compliance department is responsible for the following activities: . . . (9) monitoring and measuring the Company's adherence to all applicable Tenet policies and legal and regulatory requirements related to federal healthcare programs; (10) directing an annual screening of individuals for exclusion from federal health care program participation as required by federal regulations; (11) maintaining a database of all arrangements involving the payment of anything of value between Tenet and any physician or other actual or potential source of health care business or referrals to or from Tenet; and (12) overseeing annual audits of clinical quality, referral source arrangements, outliers, charging, coding, billing and other compliance risk areas as may be identified from time to time.

Consolidated Am. Class Action Compl. 30–31.[1]

Plaintiffs complain that these sorts of statements made by Defendants were materially false and misleading because Tenet (1) was engaged in a "widespread scheme to pay kickbacks to Clinica" at the time it made these statements; (2) falsely certified that it was in compliance

---

[1]Identical or substantially similar statements made by Defendants on different dates are identified throughout the Complaint. For the sake of efficiency, the Court addresses this particular statement as a representative sample of all similar statements in the Complaint.

with the law; (3) failed to prevent senior executives from circumventing its internal policies on compliance; (4) failed to "systematically review" its compliance with relevant laws; (5) failed to meet minimum compliance standards; and (6) failed to properly monitor and audit its business activities related to Medicare and Medicaid programs. Defendants correctly point out, however, that the fact that a few of Tenet's hospitals were engaged in criminal conduct during the Class Period does not render Tenet's generalized statements to investors materially false or misleading. No compliance efforts will ever be 100 percent effective at detecting or stopping all bad conduct inside a large company and "general statements about reputation, integrity, and compliance with ethical norms are inactionable puffery." *City of Pontiac Policemen's and Firemen's Retirement Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) (internal quotation omitted); *see Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 372 (5th Cir. 2004) (noting that "vague and optimistic" statements that contain "no concrete factual or material misrepresentation" are non-actionable puffery and cannot support a securities fraud action). Moreover, Defendants have pointed out that hospital employees involved in the illegal Clinica kickbacks took active steps to avoid Tenet's internal controls and conceal their activities from the company's directors. Defs.' Mot. to Dismiss 16 n.8.

The Court is of the opinion that none of these general statements from Tenet about its ongoing compliance efforts and internal auditing procedures were specific or concrete enough to constitute an assurance to investors that Tenet was in *full* compliance with all laws and regulations or that Tenet faced no possibility of being investigated for improper conduct; also, none of these statements contain concrete factual or material misrepresentations related to the Clinica matter, but were only generalized statements about Tenet's compliance and internal

control efforts across hundreds of facilities. This group of statements cannot support Plaintiffs' claim for securities fraud. *See* Defs.' Mot. to Dismiss 16–18; Defs.' Reply 7–9.

**b. Statements About Government Investigations and Subpoenas**

Plaintiffs' next group of allegations concerns omissions by Tenet about government investigations and, more specifically, the company's failure to immediately disclose that it had received subpoenas in connection with these investigations. A representative sample of these allegations reads as follows:

> Defendants further failed to disclose that in May 2012, the OIG-HHS issued a comprehensive subpoena demanding that Tenet produce documents from January 2004 through May 2012 regarding the relationship between Clinica and Tenet's four hospitals in the Southeast Region. Tenet knowingly withheld the existence of this subpoena from investors until February 26, 2013 even though it was likely that the Company faced severe civil and criminal liability that would materially impact its business and operations.
>
> The DOJ Investigation was material to investors and was required to be disclosed immediately because Defendants knew that the investigation would reveal that Tenet's revenues were derived, in part, from the illegal kickback scheme. Moreover, Defendants' boilerplate disclosures concerning regulatory investigations generally could be understood, by a reasonable investor, as a denial that Tenet was then being actively investigated for violations of the federal Anti-Kickback statute and the FCA with respect to the Clinica matter. Third, based on Defendants' knowing and willful violations of the federal Anti-Kickback statute, including but not limited to their failure to maintain adequate compliance programs, internal controls and accurate books and records, Defendants knew upon receipt of the subpoena that it was probable, and undoubtedly reasonably possible, that the DOJ Investigation would result in imposition of fines and penalties and would have a material impact on Tenet's business, operations, and finances.

Consolidated Am. Class Action Compl. 35–36.[2]

---

[2]Identical or substantially similar allegations of omissions by Tenet are identified and repeated throughout the Complaint. For the sake of efficiency, the Court addresses these

It is undisputed that Tenet did disclose the existence of the 2012 subpoena and all other matters related to ongoing investigations in its periodic public filings, and the Complaint therefore clarifies that Tenet "was required to [disclose such information] *immediately*[.]" Consolidated Am. Class Action Compl. 35 (emphasis added). Plaintiffs' arguments that these sorts of omissions by Defendants were materially false and misleading necessarily rest on some theory that the Defendants failed to timely (immediately) disclose this information, though Plaintiffs have cited no legal authority establishing that Defendants had a duty to disclose the information in any particular time frame. Plaintiffs' response to the motion to dismiss does not address why these allegations should be able to support Plaintiffs' claims and it would appear that Plaintiffs have abandoned this problematic theory in favor of presenting arguments about compliance statements and financial disclosures. The Court concludes, however, that these types of alleged omissions would provide no support for Plaintiffs' securities fraud claims (even if they had not been waived by Plaintiffs) for each of the reasons thoroughly and persuasively argued in Defendants' briefing. *See* Defs.' Mot. to Dismiss 5–10, 14–16; Defs.' Reply 10.

**c. Financial Statements and Statements About Reserves**

Plaintiffs' final, and perhaps most significant, group of allegations involves the Defendants' alleged failure to disclose that Tenet was receiving revenue from illegal activities, failure to maintain internal controls over financial reporting, and failure to identify a range of possible liabilities to which the company might ultimately be subjected. A representative sample of these allegedly actionable statements by Defendants reads as follows:

---

particular allegations as a representative sample of all similar allegations in the Complaint.

> Management is responsible for establishing and maintaining adequate internal control over financial reporting, as such term is defined in Rule 13a–15(f) under the Securities Exchange Act of 1934, as amended. Management assessed the effectiveness of Tenet's internal control over financial reporting as of December 31, 2011. This assessment was performed under the supervision of and with the participation of management, including the chief executive officer and chief financial officer.
>
> In making this assessment, management used criteria based on the framework in *Internal Control—Integrated Framework* issued by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO"). Based on the assessment using the COSO framework, management concluded that Tenet's internal control over financial reporting was effective as of December 31, 2011.

Consolidated Am. Class Action Compl. 33. Another sample of identified statements in the Complaint reads as follows:

> In accordance with ASC 450, "Contingencies," and related guidance, we record accruals for estimated losses relating to claims and lawsuits when available information indicates that a loss is probable and the amount of the loss, or range of loss, can be reasonably estimated. Where a loss on a material matter is reasonably possible and estimable, we disclose an estimate of the loss or a range of loss. In cases where we have not disclosed an estimate, we have concluded that the loss is either not reasonably possible or the loss, or a range of loss, is not reasonably estimable, based on available information.
>
> . . .
>
> Our analysis of these pending reviews is still ongoing, and we are unable to predict with any certainty the progress or final outcome of any discussions with government agencies at this time. Based on currently available information, as of September 30, 2012, we had recorded reserves of approximately $2 million in the aggregate with respect to two hospitals under review in the foregoing governmental proceedings. These reserves have not changed from the amounts reported for the three months ended June 30, 2012; however, changes in the reserves may be required in the future as additional information becomes available. We cannot predict the ultimate resolution of any governmental review, and the final amounts

> paid in settlement or otherwise, if any, could differ materially from our currently recorded reserves.

Consolidated Am. Class Action Compl. 36.[3] Other allegedly actionable statements included in this group by the Court are the Defendants' Sarbanes-Oxley Act certifications. *See, e.g.*, Consolidated Am. Class Action Compl. 32 ¶121.

Plaintiffs complain that these types of disclosures and assurances by Defendants "failed to provide a range for the loss contingency that exceeded, at least, tens of millions of dollars on the low end (the profits Tenet had earned through the kickback scheme) and hundreds of millions of dollars on the high end (three times the revenue Tenet earned from the kickback scheme pursuant to the statute) in violation of GAAP [Generally Accepted Accounting Principles] ASC 450, knowing that the government had manifested an awareness of potential material claims under the FCA and the Anti-Kickback statute that may result in a material loss." Consolidated Am. Class Action Compl. 37. Plaintiffs allege that it was "more than reasonably possible" Defendants would be subjected to the above-described liability and that Tenet therefore had an obligation to set out a specific range of potential losses under the applicable financial reporting laws. *Id.* Plaintiffs further complain that Defendants' internal financial record keeping was inadequate and that the company failed to disclose to investors that revenue was being obtained from illegal kickbacks.

As Defendants correctly highlight, "Plaintiffs offer no facts in existence at the time of each of these accruals to show that the reserve amounts were anything other than Tenet's

---

[3]Identical or substantially similar statements made by the Defendants on different dates are identified throughout the Complaint. For the sake of efficiency, the Court addresses these particular statements as a representative sample of all similar statements in the Complaint.

honestly-held best estimate, at each relevant time, of the probable loss, consistent with the relevant GAAP guidance (ASC 450). Instead, all they muster is reiteration of the amount of the eventual resolution, coupled with a conclusory assertion that the reserves underestimated that amount." Defs.' Mot. to Dismiss 18–19 (internal citations and quotations omitted). Defendants argue that they complied with GAAP by accruing reserves for the Clinica matter when they believed that a loss was reasonably probable and by updating those reserves over time as the investigation progressed and more information became available. They contend that "the Complaint falls far short of providing particularized factual allegations that could turn Plaintiffs' hindsight-aided critique of Tenet's accounting judgments into a viable claim for securities fraud." Defs.' Mot. to Dismiss 20.

The Court agrees that Plaintiffs' allegations concerning false and misleading financial disclosures are nothing more than an attempt to argue in hindsight that Tenet should have made different accounting decisions and business judgments. Tenet's disclosures regarding the state of its financial records and reserves for probable liabilities were well within the standards permitted by ASC 450 and other disclosure requirements and none of these financial statements identified in the Complaint are supportive of a claim for securities fraud. Just because Plaintiffs would have liked *more* information than what was provided or would have preferred Tenet to provide a speculative range of potential losses that would occur years in the future does not mean that the statements actually made by Defendants throughout the Class Period were in any way materially false or misleading at the time they were made.

As for Plaintiffs' arguments that Defendants should have known about a risk of significant losses based on the 2012 subpoena and the 2009 sealed *qui tam* action, both of these

arguments simply defy logic. First, a subpoena from a government agency would have informed Tenet only that there was an investigation underway into *possible* misconduct and that Tenet was required to turn over documents pursuant to that investigation. The standard for issuing subpoenas is very low and it is impossible to follow Plaintiffs' argument that the mere issuance of an investigative subpoena at the outset of an investigation should have somehow given Tenet the ability to predict that it was going to have to pay hundreds of millions of dollars *years later* at the conclusion of the investigation. Second, Plaintiffs' arguments about the *qui tam* action are even more puzzling. Plaintiffs repeatedly argue throughout their response that Defendants were on notice of a *sealed qui tam* action brought by a whistle blower since that action was filed in 2009. But the very nature of a sealed *qui tam* action usually prevents a defendant from learning about its existence until after the government has made a decision regarding intervention—a decision that can sometimes take the government years to make. Plaintiffs have not alleged that Defendants were ever served with this *qui tam* action prior to the government's intervention decision and the district court's lifting of the seal in 2013, and it is undisputed that Tenet promptly provided notice of the lawsuit after the seal was lifted in 2013. The Court sees no logical reason to conclude that a sealed case (which Plaintiffs have not alleged was served on Defendants before 2013) could have possibly put the Defendants on notice of anything.

The Court further rejects Plaintiffs' complaints about the Defendants' failure to maintain adequate internal controls and failure to disclose the existence of illegal revenue for the reasons explained in Parts (B)(1)(a) above and B(2) below.

For each of these reasons, and those more thoroughly argued by Defendants, this group of statements fails to support Plaintiffs' claims. Defs.' Mot. to Dismiss 18–25; Defs.' Reply 2–7.

**2. Scienter**

Defendants next assert that the Complaint fails to provide specific facts that create a strong inference of scienter, as required by the PSLRA. Scienter is defined as an "intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." *R2 Investments LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005) (internal quotations omitted). "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standard of ordinary care[.]" *Owens v. Jastrow*, 789 F.3d 529, 536 (5th Cir. 2015) (internal quotation omitted). As stated above, Federal Rule of Civil Procedure 9(b) and the PSLRA require that the Plaintiffs "must state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." *Neiman*, 854 F.3d at 746. Accordingly, a complaint for securities fraud will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

For the reasons persuasively stated by Defendants, the Court is of the opinion that Plaintiffs have not adequately pleaded the scienter requirement for each Defendant and that the more compelling inference in this case is that no intentional or severely reckless fraud was committed. Defs.' Mot. to Dismiss 25–32; Defs.' Reply 10–18. Plaintiffs' theories about fraud are largely unsupported by citation to any particular facts and simply do not create the *strong* inference of scienter necessary for this case to proceed to discovery. Plaintiffs' allegations (read

holistically and in concert with one another, as required), even if potentially believable, are certainly not as compelling as the alternative conclusion that a few isolated hospitals in Tenet's nationwide healthcare system engaged in illegal conduct without the knowledge or approval of Tenet and actively concealed their actions from Tenet until a government investigation discovered the conduct; Plaintiffs have not satisfied their pleading burden on this element. *See Tellabs, Inc.*, 551 U.S. at 324; Defs.' Reply 10–18.

**3. Loss Causation**

Finally, Defendants argue that the complaint does not plausibly plead loss causation. Unlike Defendants' first two arguments, which are analyzed under the heightened pleading standards of Rule 9(b) and the PSLRA, the Fifth Circuit has held that "Rule 8(a)(2) requires the plaintiff to allege, in respect to loss causation, a facially plausible causal relationship between the fraudulent statements or omissions and plaintiff's economic loss[.]" *Lormand*, 565 F.3d at 258. At this early stage of the litigation, applying the general plausibility standard of *Twombly* and *Iqbal*, the Court is of the opinion that Plaintiffs' allegations of loss causation are sufficiently pleaded to survive a motion to dismiss. *See* Pls.' Mem. of Law in Opp'n 31–35. This is ultimately of no consequence, however, given that the motion to dismiss must be granted for the alternative reasons detailed above.

**C. Leave to Amend**

Plaintiffs pray, in a single sentence of their Conclusion, that they be granted leave to amend their pleadings if the Court grants any part of the Defendants' Motion to Dismiss. Rule 15(a) requires a trial court to grant leave to amend "freely," and its language demonstrates a bias in favor of granting leave to amend. *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016);

Fed. R. Civ. P. 15(a)(2). However, leave to amend is not automatic, and decisions concerning motions to amend are left to the discretion of the court. *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998).

The Court notes that Plaintiffs have already filed an amended complaint in this case; thus, they have been afforded at least one opportunity to amend their pleadings and plead their best case. Further, the request for leave to amend is made in a single sentence at the conclusion of Plaintiffs' Memorandum in Opposition, almost as an afterthought. This "motion" seeking leave to amend fails to comply with the Local Rules for the Northern District of Texas in multiple respects and is therefore not properly filed. *See* L.R. 5.1© (requiring that any motion must be clearly identified in the title of a document); L.R. 7.1(h) (requiring that a motion to amend must contain a certificate of conference); L.R. 15.1(b) (requiring that a copy of the proposed amended pleading must be attached to a motion to amend as an exhibit). The "motion" does not even specify which pleadings the Plaintiffs would attempt to amend if given the opportunity or how they might be able to overcome the deficiencies identified above with more particularized pleadings. While a formal motion to amend is not always required, "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (internal quotations and citations omitted).

For these reasons, as well as the fact that the Court concludes any amendment by Plaintiffs would be futile and unlikely to cure the above-identified deficiencies in a manner

sufficient to survive a future motion to dismiss, the request for leave to amend is denied. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Request for Judicial Notice is **GRANTED**, Lead Plaintiffs' Notice of Supplemental Authority is disregarded by the Court, and Defendants' Motion to Dismiss is **GRANTED**. Plaintiffs' Consolidated Amended Class Action Complaint for Violation of the Federal Securities Laws is **DISMISSED WITH PREJUDICE** as against all Defendants.[4]

SO ORDERED this 20th day of December, 2017.

SAM R. CUMMINGS
SENIOR UNITED STATES DISTRICT JUDGE

[4]"[C]ontrol person liability is secondary only and cannot exist in the absence of a primary violation." *Neiman*, 854 F.3d at 746 (internal quotation omitted). Because the Court finds that no primary violation of Section 10(b) or Rule 10b–5 has been sufficiently pleaded, Plaintiffs' claims under Section 20(a) against the individual Defendants must also be dismissed.